## Case No. 9,225.

### The MARY SANDFORD.

### The DORIS.

### [3 Ben. 100.][1]

District Court, S. D. New York. Dec., 1868.

COLLISION ON LONG ISLAND SOUND — STEAMERS MEETING—CONFUSION OF SIGNALS—LOOKOUT.

1. The propeller D., bound to New York, was on the north side of the channel east of Execution Light in Long Island Sound, heading southwest by west, when she discovered, about a point on her port bow, both the green and the red lights of the propeller M. S., which was also on the north side of the channel, heading northeast half north. The true course of the D., after passing the buoy at Execution Light, would have been southwest half south, but, as soon as she had passed the buoy, she ported her helm and blew one blast of her whistle. The answer to this was two blasts of the whistle from the M. S., to which the D. replied with a single blast, and immediately stopped and reversed her engine. The M. S. saw the lights of the D. a point or a point and a half on her starboard bow, she blew two whistles when about a mile off, and then, hearing the single whistle from the D., she again blew two whistles and starboarded, and, on hearing the second single whistle from the D., stopped and reversed her engine. Her first two whistles were not heard on board the D. The vessels came in collision, the stem of the D. striking the M. S. on her starboard bow: *Held*. That the vessels were meeting end on or nearly so, and were both bound to port their helms, in accordance with the 13th article of the Steering and Sailing Rules, and that the M. S. was in fault in starboarding.

[Cited in The Free State, Case No. 5,090.]

2. If there is a confusion of signals between two approaching steamers, each vessel is bound to stop, as soon as it perceives the confusion, in accordance with the 16th article.

[Cited in The Manitoba, Case No. 9,029.]

3. The M. S. therefore, was in fault in not stopping and reversing her engine when she heard the first single whistle from the D., which she understood to be in answer to her first two whistles.

4. As each vessel saw the other at a sufficient distance, there was no question of lookout.

5. The D. was not in fault.

In admiralty.

Benedict & Benedict, for the Doris.

Dudley Field and Dimock & Whitney, for the Mary Sandford.

BLATCHFORD, District Judge. These are cross actions to recover damages for a collision which took place at about four o'clock on the morning of the 15th of September, 1865, between the steam propeller Mary Sandford and the steam propeller Doris, between Hart's

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Island and Execution Light in Long Island Sound. The Mary Sandford was on her way from New York to Boston, and the Doris was on her way from Boston to New York. The Doris was on the north side of the channel, heading southwest by west, and eastward of Execution Light, when she discovered ahead, about a point on her port bow, the lights of the Mary Sandford. Both the green and red lights of the Mary Sandford were visible from the Doris. Just to the westward of the place where the Doris was when she discovered the lights of the Mary Sandford, was a buoy off Execution Light, which buoy the Doris, in her course, would leave to the northward. Off the buoy, the course of the Doris, if nothing had intervened, would have been changed, by the chart, to southwest half south, a change of a point and a half to the southward from the course she had previously been running on, and which would have required, to effect it, a starboarding of her helm to an extent sufficient to produce such variation. But the Doris, having seen the Mary Sandford, and perceiving that the two vessels were meeting end on, or nearly end on, so as to involve risk of collision, obeyed the rule laid down by article 13 of the "Steering and Sailing Rules" prescribed by the act of April 29th, 1864 (13 Stat. 58), and, inasmuch as the two vessels were steamers, put her helm to port, when she had passed the buoy and there was room for her to swing to the northward. At the same time she blew one blast of her steam whistle, as an indication to the Mary Sandford that she was porting. In reply to this one blast from the Doris, there was heard on the Doris a signal of two blasts from the Mary Sandford, indicating to the Doris a confusion of signals and that the Mary Sandford was starboarding. The Doris immediately gave orders for her engine to stop and reverse, which orders were obeyed with all practicable rapidity, and she gave another single blast with her steam whistle and put her wheel hard-a-port. Before her headway had been stopped entirely, her stem came in collision with the starboard side of the Mary Sandford, not a great way back from the stem of the latter, cutting into her some distance. Both vessels were damaged by the collision, the Doris less than the Mary Sandford.

The Mary Sandford, for some time before she sighted the lights of the Doris, and at that time, was also on the north side of the channel. Her course, at the time she sighted the lights of the Doris, was, as nearly as I can make it out from the evidence, about northeast half north, a course diverging a point and a half to the northward from a line parallel to what was the course of the Doris up to the time the Doris ported her helm after passing the buoy off Execution Light. This course of the Mary Sandford, if northeast half north, was parallel to what would have been the chart course of the Doris after passing the buoy off Execution Light, northeast half north being the counterpart of southwest half

south; and, although the Mary Sandford was on the north side of the channel, it is not at all probable that, in the comparatively confined channel extending from off the southerly point of Hart's Island to off the buoy at Execution Light, she was running upon any other than the chart course, and the testimony also leads clearly to that conclusion.

The fact that the two vessels were in these respective positions and on these respective courses when they first sighted each other's lights is also made evident by the fact that these must have been their courses and positions or they could not have seen each other's lights in the respective bearings shown by the testimony. The testimony of those on board of the Doris is that they first saw the lights of the Mary Sandford bearing from a point to a point and a half on the port bow of the Doris. The testimony of those on board of the Mary Sandford is that they first saw the lights of the Doris bearing from a point to a point and a half on the starboard bow of the Mary Sandford. These are just the bearings which the lights of each vessel would have had to the persons on board of the other vessel, if the course of the Doris had been southwest by west, and that of the Mary Sandford had been northeast half north.

On this state of facts, as the Doris was not far to the eastward of Execution Light when her lights were first sighted by the Mary Sandford, and the latter was at that time a considerably greater distance to the westward of Execution Light, it must have been, or ought to have been, quite apparent to those on board of the Mary Sandford, that the Doris, when compelled to change her course off Execution Light to correspond with the chart course from that point westward, would be brought to meet the Mary Sandford end on, or nearly end on, so as to involve risk of collision. This was apparent to those on board of the Doris, for her helm was put to port as soon as that manoeuvre could be safely executed after passing the buoy off Execution Light. On the same state of facts, the helm of the Mary Sandford ought to have been put to port. Instead of this being done, her helm was starboarded, and she persisted in keeping it to the starboard and thus running across the proper and lawful course of the Doris, until the collision occurred. In thus starboarding her helm instead of porting it, the Mary Sandford violated the requirement of article 13, before cited, and was in fault. The story of the witnesses on the part of the Mary Sandford, that they saw only the green light of the Doris, and did not see her red light at all, which is offered as an excuse for the starboarding of the Mary Sandford, on the idea that the Mary Sandford was some way to the northward of the course of the Doris, and therefore could not safely port, is not credible. Besides, the evidence shows satisfactorily that the single whistle of the Doris, indicating that she was porting, was heard on board of the Mary Sandford, be-

fore the helm of the Mary Sandford was starboarded.

The testimony shows that the Mary Sandford blew a signal, of two blasts of her steam whistle, when she was about a mile off from the Doris; that that signal was not heard on board of the Doris; that, after the Mary Sandford had blown that signal, the Doris blew her signal of one blast, before-mentioned, which was blown at the same time that the Doris ported her helm; that that signal from the Doris was heard on board of the Mary Sandford, and was understood by those on board of her to be an answer by the Doris to the signal of two blasts blown by the Mary Sandford; that, on that signal of one blast, from the Doris being heard on board of the Mary Sandford, a second signal, of two blasts, was blown by the Mary Sandford, and her helm was starboarded; that this last signal, of two blasts, from the Mary Sandford, was heard on board of the Doris; that the Doris, on hearing it, immediately blew a second signal, of one blast and stopped and reversed; that this last signal from the Doris was heard on board of the Mary Sandford; and, that the Mary Sandford, immediately on hearing it, stopped and reversed. When a steam vessel is approaching another steam vessel, so as to involve risk of collision, and there is a confusion or misunderstanding apparent to either of them, in reference to the signals made by either, the necessity arises for stopping and reversing, on the part of the vessel which perceives such confusion or misunderstanding. Such necessity is the necessity referred to in article 16 of the act of April 29th, 1864, which provides, that "every steamship, when approaching another ship, so as to involve risk of collision, shall slacken her speed, or, if necessary, stop and reverse." The Doris perceived such confusion or misunderstanding of signals, when, and only when, after she had blown her first signal of one blast, she heard what was really the Mary Sandford's second signal of two blasts, and the Doris immediately, in compliance with the law, stopped and reversed. The Mary Sandford perceived such confusion or misunderstanding of signals, when, after having blown her first signal of two blasts, she heard the Doris answer by a signal of one blast. But she did not then stop and reverse, as she ought to have done. On the contrary, she blew another signal, of two blasts, and then waited to hear the second signal of one blast, from the Doris, before giving the order to stop and reverse. This was another fault on the part of the Mary Sandford. If she had stopped and reversed when she heard the first signal, of one blast, from the Doris, as she ought to have done, there would, probably, have been no collision, even with the wrongful starboarding of the Mary Sandford.

I do not think the question of the lookout, on either vessel, has any bearing in the case. Each vessel saw the other at a sufficient distance off to make the proper manoeuvres to avoid a collision.

It is urged as a fault, against the Doris, that her engine would not stop its forward motion, and take on a reverse motion, as quickly as some other engines would. But it is not shown that the engine was an improper or unsafe one, or that it was not in order. Nothing amounting to any fault is shown, in respect to the engine of the Doris; and the court cannot speculate as to whether the Doris might not, with a different engine, have stopped short of colliding with the Mary Sandford.

There must be a decree, dismissing the libel against the Doris, with costs. In the case against the Mary Sandford, there must be a decree for the libellants, with costs, with a reference to a commissioner, to ascertain and report the damages sustained by them, by the collision.